IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**INTEK CONSTRUCTION CORP.**                                                                                             **PLAINTIFF**

**V.**                                         **CASE NO. 5:25-CV-5211**

**TEGRITY CONTRACTORS, INC.**                                                                                          **DEFENDANT**

## OPINION AND ORDER

Before the Court is Defendant Tegrity Contractors, Inc.'s Motion to Compel Arbitration (Doc. 7) and Brief in Support (Doc. 8), to which Plaintiff Intek Construction Corp. filed a Response in Opposition (Doc. 9) and Tegrity filed a Reply (Doc. 12). On February 10, 2026, the Court held a hearing on the Motion.

The sole question before the Court is whether the parties' dispute should be sent to arbitration. The Court evaluates Tegrity's Motion under Federal Rule of Civil Procedure 12(b)(6), as the Court has not considered any facts outside the record in evaluating the parties' arguments and arriving at its decision. *See Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When analyzing a motion to dismiss, "a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

## I.  BACKGROUND

In mid-2024 Tegrity, a Texas contractor, hired Intek, an Arkansas subcontractor, to perform renovation work at certain hospital buildings operated by the Veterans Administration in Little Rock, Arkansas, and in Fayetteville, Arkansas. *See* Doc. 3, ¶¶ 7–8. The parties executed a Master Subcontract Agreement ("MSA") setting forth Intek's scope of work. Included in the MSA was the following arbitration clause:

> Any dispute, controversy, or claim arising out of or related to this Agreement or any Purchase Order, or any breach or termination of this Agreement or any Purchase Order, and any alleged violation of any federal, state, or local statute, regulation, common law, or public policy, whether sounding in contract, tort, or statute, shall be submitted to and decided by binding arbitration.

(Doc. 3-1, ¶ 12.05). Critically, the arbitration clause specified that "[a]rbitration shall be administered by the American Arbitration Association *and held in Collin County, Texas* before a single arbitrator . . . ." *Id.* (emphasis added). Representatives from Intek and Tegrity manifested their agreement to all terms in the MSA by signing the face sheet of the document and initialing every page, including the page with the arbitration clause.

The parties' business relationship quickly soured, and on March 18, 2025, Tegrity terminated the MSA. *See* Doc. 3, ¶¶ 17–18. Intek claims that it substantially performed a majority of its contract work at both the Little Rock and Fayetteville construction sites before it was terminated, but Tegrity failed to reimburse Intek for its labor and materials, which combined exceeds $1.5 million. *See id.* Rather than bring these claims before an arbitrator, as agreed, Intek filed a lawsuit against Tegrity in Arkansas state court on September 11, 2025, claiming breach of contract and tortious interference with business expectancy, as well as alternative claims for equitable relief. Intek anticipated the parties' current dispute over arbitration: Count I of the Amended Complaint is a claim for

declaratory judgment, which asks the Court to find that the arbitration clause in the MSA is void under Arkansas law. *See id.* ¶¶ 41–51. According to Arkansas Code § 4-56-104(c), an arbitration clause in a construction contract is void if the arbitration venue is somewhere other than Arkansas.

Tegrity removed the case to federal court, citing diversity as the basis for federal subject matter jurisdiction. *See* Doc. 2 (citing 28 U.S.C. § 1441). In Tegrity's view, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1–16, preempts Arkansas Code § 4-56-104(c) and renders the MSA's arbitration clause valid and enforceable.

## II.  DISCUSSION

Before getting into the specifics of Arkansas Code § 4-56-104(c), it is clear from the outset that the FAA applies to the MSA's arbitration clause, which the parties executed by mutual consent. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration under the [FAA] i[s] a matter of consent, not coercion."). Section 2 of the FAA is a congressional "declaration [of] a national policy favoring arbitration"; it broadly governs "contracts evidencing a transaction involving commerce." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984) (citing 9 U.S.C. § 2). The MSA falls under § 2 of the FAA because the contract involved parties from different states and a construction project that utilized materials flowing through interstate commerce. Since the FAA governs the arbitration clause, the Court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

Arkansas is one of thirty-two states to have enacted a "home-court" statute to govern the litigation and arbitration of construction contracts. *See* Daniel D. McMillan, *et al.*, *Construction Home-Court Statutes: Scope, Enforcement, and Preemption Under the Federal Arbitration Act*, 43 Construction Law. 9, 2 (Fall 2024). A home-court construction statute prohibits parties to a construction contract from agreeing to litigate or arbitrate outside the state where the construction work took place. Arkansas Code § 4-56-104(c) is a typical home-court construction statute in that it renders "void and unenforceable" any "provision, covenant, clause, or understanding written in a construction agreement or construction contract . . . that requires any litigation, arbitration, or other alternative dispute resolution proceeding arising from the construction agreement or construction contract to be conducted in another state." If a construction contract's arbitration clause specifies an out-of-state venue, that clause will be severed "and shall not cause the entire . . . contract to become unenforceable." Ark. Code Ann. § 4-56-104(d).

Returning to the two-step process for analyzing arbitration clauses under the FAA, step one asks whether the clause is valid and enforceable. Setting aside for a moment the issue of whether Arkansas Code § 4-56-104(c) (hereafter, "Home-Court Statute") voids the MSA's arbitration clause, the Court finds that the clause is otherwise enforceable because it manifests mutual agreement and mutual assent, legal consideration, and a meeting of the minds. *See Alltel Corp. v. Sumner*, 360 Ark. 573, 576 (2005). At the hearing, Intek's counsel argued that the arbitration clause was unconscionable because Tegrity drafted the entire MSA and supposedly "embedded" the arbitration agreement in the contract without explaining or highlighting it. Intek's counsel conceded, however, that Intek's representative presumably read the entire contract and

did, in fact, initial every page. It is black-letter law that a party to a contract—particularly a sophisticated party like Intek—is presumed to have read and understood all the contract's express provisions. *See Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 151–52 (2005). Furthermore, the Amended Complaint fails to assert any positive act of fraud or concealment by Tegrity and contains no facts to plausibly suggest the arbitration clause is unenforceable. Intek simply regrets its agreement to arbitrate in Texas, which is not a legal reason to find the arbitration clause invalid.

With respect to the second step of the analysis, Intek agrees that—but for the application of the Home-Court Statute—all claims in the Amended Complaint fall within the agreement to arbitrate because they arise out of the work performed pursuant to the MSA.[1]

Turning now to the crux of the dispute, the Home-Court Statute, the Court begins its analysis by observing that the FAA's purpose is to "ensur[e] that private agreements to arbitrate are enforced according to their terms," *Volt*, 489 U.S. at 479, which means that a court *must* enforce an otherwise valid arbitration clause, "save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. According to the Supreme Court, the "grounds" referred to in § 2 are only those "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). As no such defenses appear in the Home-Court

---

[1] Intek's concession in this regard is not surprising, as broad arbitration clauses like the one here, encompassing "[a]ny dispute, controversy, or claim arising out of or related to this Agreement," (Doc. 3-1, ¶12.05), are to be construed broadly. The Eighth Circuit views the "strong national policy in favor of arbitration" as requiring all "doubts about whether an arbitration clause should be construed to cover a particular dispute" to be resolved "in favor of arbitration." *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005).

5

Statute, the law contains no "grounds" to revoke the otherwise valid arbitration clause. Moreover, the requirements of the Home-Court Statute are not "generally applicable" to all Arkansas contracts because they only apply to construction contracts. Finally, the state legislature did not craft the language of the Home-Court Statute with the aim of salvaging otherwise enforceable arbitration clauses. Instead, the Statute deems all nonconforming clauses "void and unenforceable," thus destroying any mutual agreement to arbitrate and contravening the driving purpose of the FAA. Ark. Code Ann. §§ 4-56-104(c).

Though the Court is cognizant of the fact that no other court has yet opined on FAA preemption relative to Arkansas's Home-Court Statute, many other courts have ruled similarly with respect to their respective states' home-court statutes. *See, e.g.*, *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 447 (5th Cir. 2001) (affirming district court's finding that Louisiana's home-court construction statute was preempted by FAA); *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999) (reversing district court and finding Rhode Island's franchise agreement statute's home-court provision preempted by FAA); *Global Indus. Contractors v. Red Eagle Pipeline, LLC*, 617 F. Supp. 3d 633, 638 (S.D. Tex. 2022) (finding Texas's home-court construction statute preempted); *SOS Constr. & Roofing, Inc. v. Sterling Constr.*, 2015 WL 12564176, at *6 (D. Neb. Feb. 17, 2015) (finding Nebraska's home-court construction statute preempted); *Cahill v. Alt. Wines, Inc.*, 2013 WL 427396, at *5 (N.D. Iowa Feb. 4, 2013) (finding Iowa's franchise agreement statute's home-court provision preempted); *GEM Mech. Servs., Inc. v. DV II, LLC*, 2012 WL 4094476 (D. R.I. Sept. 17, 2012) (finding Rhode Island's home-court construction statute preempted); *M.C. Constr. Corp. v. Gray Co.*, 17 F. Supp. 2d 541, 548 (W.D. Va. 1998) (finding Virginia's home-court

construction statute preempted); *R.A. Bright Constr., Inc. v. Weis Builders, Inc.*, 402 Ill. App. 3d 248, 255 (Ill. Ct. App. 2010) (finding Illinois's home-court construction statute preempted).

Because the Court finds that the Home-Court Statute is preempted by the FAA, the arbitration clause in the MSA is enforceable and the parties will be compelled to arbitrate their dispute.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Compel Arbitration (Doc. 7) is **GRANTED**, and the parties are **ORDERED** to arbitrate, per their agreement. The case is **STAYED**, and the Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY TERMINATE** it. The parties may move to reopen the case if further action of the Court is required after arbitration is complete.

**IT IS SO ORDERED** on this 18th day of February, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE